## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**

    **Plaintiff,**

  **v.**                                                     **CIVIL NO. 2:24-CV-32**
                                                                   **(KLEEH)**

**KELLY S. CRITES,**

    **Defendant.**

---

**STATE OF WEST VIRGINIA,**

    **Plaintiff,**

  **v.**                                                       **CIVIL NO. 2:24-CV-35**
                                                                     **(KLEEH)**

**JOHN W. CRITES, SR.,**

    **Defendant.**

---

**STATE OF WEST VIRGINIA,**

    **Plaintiff,**

  **v.**                                                       **CIVIL NO. 2:24-CV-36**
                                                                     **(KLEEH)**

**JOHN W. CRITES, JR.,**

    **Defendant.**

## SUPPLEMENTAL ORDER FINDING ACTIONS PROPERLY REMOVED

On December 19, 2024, the Court convened an evidentiary hearing and found that the above-captioned cases were properly removed under 28 U.S.C. § 1442. This supplemental order sets forth the Court's reasoning.

**STATE OF W. VA. V. CRITES      2:24-CV-32, 2:24-CV-35, 2:24-CV-36**

**SUPPLEMENTAL ORDER FINDING ACTIONS PROPERLY REMOVED**

## I.  BACKGROUND

On March 6, 2024, this Court entered its *Order Appointing a Receiver* in United Bank v. Allegheny Wood Products, Inc. et al., Case No. 2:24-CV-03 (the "Civil Litigation"), appointing a receiver to do the following:

> (a) assume full operation, management, and control of all assets and operations of Allegheny Wood Products, Inc. ("AWP"), Allegheny Wood Products International, Inc. ("AWPI"), and Allegheny Wood Timber Products, LLC ("AWTP") (collectively, the "Corporate Defendants"); and (b) oversee, manage, and direct the acts, conduct, operations, assets, liabilities, and financial condition of the Corporate Defendants located within the State of West Virginia, State of Maryland, and Commonwealth of Pennsylvania, and all of the rents, incomes, revenues, and profits of the Corporate Defendants[.]

See Case No. 2:24-CV-03 at ECF No. 18.  On March 27, 2024, the Court entered an amended order doing the same.  See id. at ECF No. 47.

In October 2024, a grand jury in Hardy County, West Virginia, returned indictments against Kelly S. Crites, John W. Crites, Sr., and John W. Crites, Jr.[1]  Each indictment charges the defendants with the following:

---

[1] Kelly S. Crites and John W. Crites, Jr. are the children of John W. Crites, Sr.  Kelly S. Crites is named in Case Nos. 24-F-55, 24-F-58, 24-F-61, 24-F-64, 24-F-67, and 24-F-70. John W. Crites, Sr. is named in Case Nos. 24-F-53, 35-F-56, 24-F-59, 24-F-62, 24-F-65, and 24-F-68.  John W. Crites, Jr. is named in Case Nos. 24-F-54, 24-F-57, 24-F-60, 24-F-63, 24-F-66, and 24-F-69.

- Count One: Felony Obtaining Money or Goods by False Pretenses, in violation of W. Va. Code § 61-3-24(a)(1); and

- Count Two: Conspiracy to Commit Obtaining Money or Goods by False Pretenses, in violation of W. Va. Code § 61-10-31.

Each indictment relates to a different alleged victim.

The prosecutions stem from the following set of events: (1) the alleged victims delivered logs to Allegheny Wood Products, (2) the alleged victims were either paid with dishonored checks or not paid at all, and (3) Allegheny Wood Products proceeded to liquidate the logs, despite not having paid for them. The discovery shows that the liquidation occurred at the direction of the receiver appointed in the Civil Litigation. The receiver took the position that the logs were the bank's collateral and should be sold in the course of the federal receivership.

The alleged victims are creditors of the receivership estate in the Civil Litigation. On December 3, 2024, Hardy County Prosecutor Lucas See ("See") offered to move to dismiss the criminal charges against Crites, Sr. in exchange for his payment of restitution to the alleged victims. Crites, Sr., as a director of Allegheny Wood Products, is explicitly forbidden by the Court from "[p]ossessing, managing, or controlling any part of the Receivership Estate and from interfering in any way with the possession or management of the Receivership Estate by the

**SUPPLEMENTAL ORDER FINDING ACTIONS PROPERLY REMOVED**

Receiver[.]"  See Case No. 2:24-CV-03, ECF No. 47, at ¶ 12(a). See's offer is what prompted the removal of the criminal actions. The defendants felt that a restitution payment made to the alleged victims for claims against Allegheny Wood Products would circumvent the orderly payment of creditors and would require Crites, Sr. to violate this Court's injunction.

## II.  DISCUSSION

Under 28 U.S.C. § 1442, a criminal prosecution commenced in state court may be removed to federal court if it is directed to "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ."  28 U.S.C. § 1442(a)(1).  In the Fourth Circuit, a private actor may remove a case to federal court under § 1442(a)(1) by showing that (1) he or she "acted under" a federal officer; (2) he or she has "a colorable federal defense"; and (3) the charged conduct was carried out for or in relation to the asserted official authority.  See Sawyer v. Foster Wheeler LLC, 860 F.3d 249, 254 (4th Cir. 2017) (citations omitted).  Although the removing defendant bears the burden of establishing federal jurisdiction, "the federal officer removal statute must be 'liberally construed'" and "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)[.]"  Cnty. Bd. of

Case 2:24-cv-00036-TSK   Document 10   Filed 01/06/25   Page 5 of 10 PageID #: 675

**STATE OF W. VA. V. CRITES        2:24-CV-32, 2:24-CV-35, 2:24-CV-36**
**SUPPLEMENTAL ORDER FINDING ACTIONS PROPERLY REMOVED**

Arlington Cnty. v. Express Scripts Pharm., Inc., 996 F.3d 243, 250-51 (4th Cir. 2021) (citations omitted). Notably, the parties agree that this action is removable to federal court. See ECF No. 5 in 2:24-CV-32; ECF No. 4 in 2:24-CV-35; ECF No. 6 in 2:24-CV-36. For the reasons discussed, the Court agrees with the parties' stipulation and finds that removal is appropriate.

1. **The defendants have satisfied the elements of removal under 28 U.S.C. § 1442.**

   a. **The receiver constitutes a federal officer.**

The Court and the parties have been unable to locate any cases in the United States Court of Appeals for the Fourth Circuit that indicate whether a federal receiver is considered a federal officer. The United States Court of Appeals for the Ninth Circuit, however, has explicitly recognized that "a receiver is an officer of the courts of the United States" for purposes of 28 U.S.C. § 1442. Ely Valley Mines, Inc. v. Hartford Acc. and Indem. Co., 644 F.2d 1310, 1312 (9th Cir. 1981).[2]

In Gay v. Ruff, 292 U.S. 25 (1934), which analyzed 28 U.S.C. §§ 76 and 77 (upon which 28 U.S.C. § 1442 was based), a railway receiver was sued for injuries resulting from the negligent operation of a train. The Court recognized that the receiver was

---

[2] The defendants cite a district court case within the Ninth Circuit to support the same premise: Plata v. Schwarzenegger, No. CO1-1351 TEH, 2008 WL 2558000, at *2 (N.D. Cal. June 24, 2008).

an officer of the court but found that, under the facts, he was not "engaged in enforcing an order of the court." Id. at 39. Here, in contrast, the defendants' alleged actions related to carrying out the receiver's duties pursuant to this Court's order. Given the liberal construction of section 1442(a)(1), and persuasive authority in the Ninth Circuit, the Court finds that the receiver is a federal officer.

### b. The defendants were "acting under" the receiver.

The phrase "acting under" is broad, but not limitless, and requires that there is at least some exertion of "subjection, guidance, or control" by the federal officer. Express Scripts, 996 F.3d at 251 (citations omitted). The private actor must have engaged in "an effort to assist, or to help carry out, the duties or tasks" of the federal officer. Id. (citations omitted). Here, if the defendants engaged in the acts alleged, which include selling the logs at issue, they were doing so to assist and carry out the duties of the receiver, so this element is satisfied.

### c. The defendants have a colorable federal defense.

"Courts have imposed few limitations on what qualifies as a colorable federal defense." Id. at 254. "At its core, the defense prong requires that the defendant raise a claim that is 'defensive' and 'based in federal law.'" Id. (citations omitted). "To be 'colorable,' the defense need not be 'clearly sustainable[.]'"

Id. (citations omitted). Rather, it need only be "plausible." Id. at 254-55 (citations omitted). Courts have recognized that "the 'colorable federal defenses' prong is a low bar." Id. at 255.

Since the Supreme Court's decision of In re Neagle, 135 U.S. 1 (1890), "the law has been very clear that, under the Supremacy Clause, a federal officer cannot be held on a state criminal charge where the alleged crime arose during the performance of his federal duties and was necessary and proper to the performance of those duties." State of Conn. v. Marra, 528 F. Supp. 381, 384 (D. Conn. 1981). "The principle underlying Neagle and its progeny [is] that the federal government, as an independent and supreme sovereign, must be permitted to 'perform its functions without conforming to the police regulations of a state.'" Id. at 385 (citing Arizona v. California, 283 U.S. 423, 451 (1931), and omitting other citations). This immunity "extends to any person, including a private citizen . . . , who acts under the direction and control of federal authorities or pursuant to federal law or court order." Id. For example,

> immunity has been extended to a railroad clerk selling tickets pursuant to a federal court order which contradicted state law, Hunter v. Wood, 209 U.S. 205, 28 S.Ct. 472, 52 L.Ed. 747 (1908); to members of a posse comitatus called upon to assist a federal marshal in performing

>   his duties, West Virginia v. Laing, 133 F. 887 (4th Cir. 1904); and to the foreman of a private construction gang building a telegraph line, which had been authorized by federal law, Ex Parte Conway, 48 F. 77 (C.C.D.S.C.1891).

Id. Because the defendants, if they committed the acts alleged, were acting under the direction and control of the federal receiver, they have a colorable federal defense.

> **d.   The charged conduct was carried out in relation to the official authority of the receiver.**

To satisfy the third prong of the removal test, the conduct charged need only "relate to" the asserted official authority. See Express Scripts, 996 F.3d at 256 (citation omitted). That is, there need only be a "connection or association between the act in question and the federal office." Id. (citation omitted). Further, the Fourth Circuit generally credits the defendant's theory of the case when determining whether there is such a connection or association. Id. As has been established, the acts alleged, which include selling the logs at issue, are connected with the duties of the receiver, so this element is satisfied.

**2.   Removal here satisfies the purposes of 28 U.S.C. § 1442.**

The purpose of federal officer removal is to prevent state officials' interference with the functions of the federal government:

> [T]he general government must cease to exist whenever it loses the power of protecting itself in the exercise of its constitutional powers.  It can act only through its officers and agents, and they must act within the States.  If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a State court, for an alleged offence against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection, — if their protection must be left to the action of the State court — the operations of the general government may at any time be arrested at the will of one of its members.

Tennessee v. Davis, 100 U.S. 257, 262-63 (1880).  Put differently, federal officer removal serves to "protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court . . . officers and agents of the Government acting within the scope of their authority."  Watson v. Philip Morris Co., Inc., 551 U.S. 142, 150 (2007) (cleaned up).

Here, based on the record presented, the Court finds that the state prosecution was an attempt to interfere with the duties of the federal receiver.  Accordingly, the facts of this case fall squarely within the realm of the circumstances contemplated when Congress drafted 28 U.S.C. § 1442.

### III. CONCLUSION

For the reasons discussed, the above-captioned cases were properly removed to this Court under 28 U.S.C. § 1442. The Court will set the matters for trial by separate order.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: January 6, 2025

*Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA